IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CAROLA K. HART,                           )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )   CASE NO. 3:23-cv-137-JTA
                                          )   (WO)
CARLOS V. SUAREZ AND BADGER               )
STATE FREIGHT, INC.,                      )
                                          )
        Defendants.                       )

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Partial Summary Judgment filed by Defendants

Carlos V. Suarez and Badger State Freight, Inc. (Doc. No. 32.) Also before the Court is

Defendants' Motion to Strike. (Doc. No. 39.) For the reasons stated below, it is ORDERED

that Defendants' Motion for Partial Summary Judgment (Doc. No. 32) is GRANTED IN

PART and DENIED IN PART, and Defendants' Motion to Strike (Doc. No. 39) is

GRANTED.

## I.      JURISDICTION

The parties have consented to the exercise of dispositive jurisdiction by a magistrate

judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 8, 9.) The Court has subject matter

jurisdiction solely based on diversity of citizenship. 28 U.S.C. § 1332. The parties are

completely diverse, and the amount in controversy exceeds $75,000.00. The parties do not

contest venue or personal jurisdiction, and the Court finds sufficient grounds to support

both in the United States District Court for the Middle District of Alabama, Northern Division.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Palm v. United States*, 904 F. Supp. 1312, 1314 (M.D. Ala. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324. A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. To avoid summary judgment, the

2

nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). As stated in *Celotex*, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

### III.   STATEMENT OF FACTS[1]

Around noon on July 13, 2022, in Phenix City, Alabama, Carola K. Hart left work, as was her habit, to pick up lunch for herself and her husband. (Doc. No. 32-1 at 1.) It was a clear day. (Doc. No. 38-1 at 4.) She was on her way to Burger King, traveling along 11th Street, when she came to a stop at a red light where 11th Street crosses U.S. Highway 280. (Doc. No. 32-1 at 1.) Hart's was the first car stopped at the light waiting to cross Highway 280, which was experiencing "moderate" traffic at the time. (*Id.*; Doc. No. 32-2 at 3.) According to Hart, she waited for the light to turn green, and, when it did, she looked both ways. (Doc. No. 32-1 at 1-2.) Seeing "nothing coming," she began to move forward to

---

[1] Unless otherwise indicated, the facts set forth in this Section of this Memorandum Opinion and Order are undisputed. All reasonable factual inferences are drawn in favor of the nonmoving party, as they must be at this stage of the litigation.

cross the intersection. (*Id.*) Just as she entered the intersection, she heard a "kapow." (*Id.*) Her car moved, and she hung onto the steering wheel "for dear life," not knowing what was happening, as her vehicle spun around. (*Id.* at 2.) When her car came to a stop, she noticed that her left arm was bleeding, her glasses were no longer on her face, her purse was in the floorboard, her right shoe had flown off, the rearview mirror was dangling in front of her, and the windshield was shattered. (*Id.*) Both front airbags had deployed. (*Id.*)

Two men came running up to her and said, "Ma'am, do you know what happened?" (*Id.*) She stated that she did not, and the men pointed to a tractor-trailer rig and told her that she had been hit by it. (*Id.*)

The rig was driven by Carlos Vicencio Suarez, who contends that the light was yellow when he entered the intersection. (Doc. No. 32-2 at 3-4; Doc. No. 38-3 at 3.) His trailer was empty at the time, as he had delivered a load earlier that day and was traveling on Highway 280 on his way to pick up the next one. (Doc. No. 32-2 at 3.) As he approached the intersection with 11th Street, he was driving between forty-five and fifty miles per hour when, according to him, the light at the 11th Street intersection turned yellow. (Doc. No. 32-2 at 4; Doc. No. 38-1 at 6.) Suarez claims that he thought he had enough time to pass through the yellow light, so he maintained his speed and proceeded through the intersection. (Doc. No. 32-2 at 4-5.) He was not aware of what the vehicles in the other two lanes of Highway 280 were doing because he "was not paying attention to that. [He] was paying attention to crossing the intersection." (Doc. No. 38-1 at 7.)  He did not apply his brakes, but maintained his speed as he went through the intersection because he intended to pass through the intersection with no incident. (*Id.* at 9.) In Suarez's opinion, had he

tried to slam on the brakes to stop for the yellow light, his brakes may have locked, which could have caused his rig to jackknife in the intersection, causing "a worse situation." (Doc. No. 32-2 at 5.) As Suarez proceeded through the intersection, he heard a noise as if he had hit something, and he couldn't figure out where it came from until, in his rear-view mirror, he saw a car near the tires on his truck. (Doc. No. 32-2 at 4.) He pulled over to investigate. (*Id*.) Police arrived, and he made a statement to the police. (*Id*. at 5.) A post-accident drug test on Suarez was negative. (Doc. No. 32-4.)

Miszka Trucking, LLC, owned the truck Suarez was driving at the time of the accident. (*Id*.) However, Suarez was hauling freight as an independent contractor for Badger State Freight, Inc. (Doc. No. 32-3 at 1.) He had driven as an independent contractor for Badger State since 2016. (*Id*. at 4.) Prior to the accident, Suarez had not been in violation of any of Badger State's policies, nor had he been disciplined by Badger State for any reason. (*Id*. at 4-5.) Justin Grantin, who has owned Badger State since 2016, testified in a deposition that, prior to the accident, Suarez had been a "very good and safe driver" who kept "prestigious logs," and "never ha[d] any issues." (*Id*. at 1, 5-6.) He had never been taken out of service for any medical issues. (*Id*. at 6.) About ten years prior to the accident, he did have "some moving violations." (Doc. No. 38-1 at 8.)

Badger State has a seventeen-point process for screening, selecting, and training an independent contractor driver. (Doc. No. 32-2 at 2, 4.) In addition, Badger State's insurance company vetted the drivers to determine if it would insure them according to its own guidelines. (*Id*. at 2.) Badger State hired and trained Suarez in 2016. (*Id*. at 4.) In the vetting process prior to hiring, Suarez's record showed that he had safety violations for not passing

one out of six inspections, for operating without proof of periodic inspection, for inadequate brakes, and for an oil or grease leak. (*Id*. at 3.) At that time, the most recent violation, which was the one for inadequate brakes, had occurred in 2015. (*Id*.) In addition, Suarez had citations for failure to pay fines in 2008 and 2009. (*Id*.) The training process also included a health certificate, drug screening, training on company safety policies, and a two-week ride-along test. (*Id*. at 4.) After hiring independent contractor drivers, Badger State provides additional training materials to them on a continuous basis. (*Id*. at 5-6.) Suarez met all of the requirements for working for Badger State, completed all required training, and regularly received and reviewed the required continuous training materials that Badger State provided him. (*Id*. at 1-6.)

In his deposition, Grantin testified that, for situations such as approaching an intersection with an empty trailer and the light turning yellow, Badger State drivers are trained to "look at the ... horizon line, as far forward as you can see to see something happen before it happens," "like a pilot." (Doc. No. 38-3 at 5.) He testified that an unloaded trailer such as the one Suarez was driving would have jackknifed if it stopped suddenly, causing a more dangerous situation. (*Id.* at 4-3.) Thus, according to Grantin, in Suarez's situation, his options were to proceed through the intersection or to slam on his brakes and jackknife, "possibly creating a worse action." (*Id*. at 3.) Grantin also testified that, had Suarez been going at a slower rate of speed, the accident could have been avoided, but he "maintained the rate of speed for the cars around him." (*Id*. at 5-6.)

Timothy Slezak, a witness at the scene of the accident, stated in an affidavit that, while he was traveling northbound on Highway 280, his own and other vehicles were

stopped at a red light at the 11th Street intersection. (Doc. No. 38-4.) He saw Suarez's commercial truck pass his vehicle and enter the intersection "even though it was already a red light." (*Id*.) Slezak stated that he "also observed Carlos V. Suarez wearing a headset or headphones and it appeared to affect his ability to hear." (*Id*.)

## IV.    PROCEDURAL HISTORY

On February 3, 2023, Hart filed suit against Suarez and Badger State in the Circuit Court of Russell County, Alabama. (Doc. No. 1-3.) In her Complaint, Suarez alleged the following facts:

> 6.      On or about July 13, 2022, at approximately 12:10 p.m. at the intersection of Highway 280 and 11th Street in Phenix City, Alabama, [Hart] was operating her 2017 Nissan Sentra and was stopped at a red light traveling westbound on 11th Street.
>
> 7.      On said date and at said time and place, Defendant Suarez was working in the line and scope of his employment with Defendant Badger State and was traveling northbound on Highway 280 near the intersection of Highway 280 and 11th Street in Phenix City, Alabama.
>
> 8.      As [Hart]'s traffic signal turned green, she began proceeding westbound on 11th Street to cross over Highway 280, when Defendant Suarez failed to obey a red traffic signal and caused his commercial truck to collide with [Hart]'s vehicle.

(Doc. No. 1-3 at 6.)

Based on those facts, Suarez brought the following claims against both Suarez and Badger State: negligent motor vehicle operation, reckless and wanton operation of a motor vehicle, and negligence and wantonness *per se* and violations of the rules of the road. (Doc. No. 1-3 at 6-10.) She also brought the following claims against Badger State: negligent/wanton hiring, training, supervision, and maintenance; negligent/wanton

entrustment; and "respondeat superior and agency." (*Id.* at 10-15.) Hart seeks compensatory and punitive damages. (Doc. No. 1-3 at 1-15.)

On March 10, 2023, Defendants removed the action from the Circuit Court of Russell County, Alabama to the United States District Court for the Middle District of Alabama. (Doc. No. 1.)

On January 30, 2024, Defendants filed a motion for partial summary judgment seeking dismissal of all Hart's claims against Badger State and of Hart's recklessness, wantonness, and wantonness *per se* claims against Suarez. (Doc. No. 32.)

On January 23, 2024, Hart filed a response to Defendants' Motion for Partial Summary Judgment. (Doc. No. 38.) As an exhibit to her response, Hart attached the Alabama Uniform Traffic Crash Report for the accident. (Doc. No. 38-2.) In the Alabama Uniform Traffic Crash Report, the investigating officer indicated that Suarez had told him that he (Suarez) "thought he could make it through the green light but before he got to the light it turned red," and that he "went through the red light and then felt [Hart's vehicle] collide with his trailer." (Doc. No. 38-2 at 4.) The Alabama Uniform Traffic Crash Report also contains the investigating officer's summary of the statements of other witnesses, including a Barber County Deputy, Slezak, and the driver of another vehicle that was affected by the accident. (*Id.*) Those witnesses' statements corroborate, or at least do not contradict, Hart's testimony that Suarez ran the red light. (*Id.*) In fact, the Barber County Deputy, Mike Molina, was recorded as having stated that "he was stopped in the middle lane of Highway 280/431 at 11th Street" when Suarez "passed him in the right lane and ran the red light colliding with" Hart's vehicle, which is fully consistent with Slezak's

statement and affidavit testimony. (*Id.*) In addition, the police officer who authored the Alabama Uniform Traffic Crash Report wrote down that the speed limit on Highway 280 at the 11th Street intersection was forty miles per hour. (*Id.* at 2.)

On January 30, 2024, Defendants moved to strike the Alabama Uniform Traffic Crash Report. (Doc. No. 39.)

Defendants' Motion for Partial Summary Judgment (Doc. No. 32) and Defendants' Motion to Strike (Doc. No. 39) are fully briefed and ripe for disposition.

## V.    ANALYSIS

A.    Hart's Recklessness, Wantonness, and Wantonness *Per Se* Claims Against Suarez, and Hart's Claims of "Respondeat Superior and Agency" against Badger State

Against Suarez, Hart asserts claims of recklessness, wantonness, and wantonness *per se*. (Doc. No. 1-3 at 7-10.) She also seeks to hold Badger State liable for Suarez's conduct on theories of respondeat superior and agency. (Doc. No. 1-3 at 11-13.)

In their initial brief, Defendants argue that these claims should be dismissed because Suarez's choice to enter the intersection on a yellow light was negligence at most, and does not rise to the level of wantonness or recklessness as those terms are defined under Alabama law. (Doc. No. 32 at 8.) The first flaw in this argument is that it requires the Court to ignore Hart's claims as they are set out in the Complaint and instead grant summary judgment on a theory of the case that Hart did not assert in her Complaint.[2] The second

---

[2] From the very beginning, Defendants have known that Hart was not suing Suarez for wantonly or recklessly running a yellow light. Hart clearly alleged in her Complaint that she was suing Suarez for tortiously running a red light. (Doc. No. 1-3 at 6-10 ¶¶ 8, 13-18.)

flaw is that Defendants' argument requires the Court to ignore a pivotal factual dispute and instead apply Alabama law to the facts only as viewed in the light most favorable to Defendants.

That is not how summary judgment works. In her Complaint, Hart alleged that Suarez recklessly and wantonly ran a red light. (Doc. No. 1-3 at 6-10 ¶¶ 8, 13-18.) Hart did not allege in her Complaint any alternative theory that Suarez committed a tort by entering the intersection on a misjudged yellow light, nor was her Complaint ambiguous as to her contention that Suarez tortiously entered the intersection on a red light. Furthermore, on summary judgment, when evidence is present on both sides of a factual dispute, that factual dispute is to be resolved in favor of the *nonmoving* party. *See Anderson*, 477 U.S. at 255. As Defendants well knew prior to filing their summary judgment motion, even though their own witness, Saurez, testified the light was yellow when he entered the intersection, Hart has testimony from more than one[3] witness, including her own deposition testimony, to support her position that Suarez's light was red and hers was green. Therefore, the ultimate issue in this case is not whether Suarez entering the intersection on a *yellow* light would have constituted wantonness or recklessness as defined by Alabama law, but whether Suarez entering it on a *red* one would have. Defendants did not address that issue in their

---

[3] Hart presented sworn testimony from herself and from Slezak that Suarez's light was red when he entered the intersection. In response to Defendants' motion to strike (Doc. No. 39), Hart did not argue that she can present testimony from the officer who recorded Suarez's admission against interest that he "went through the red light" or from two witnesses (other than Slezak) whose recorded statements in the Alabama Uniform Traffic Crash Report are consistent with Hart's version of the facts in this case. (Doc. No. 38-2 at 4.) Therefore, for purposes of summary judgment, the Court will consider only the sworn testimony of Hart and Slezak, and not the Alabama Uniform Traffic Crash Report.

initial brief. Instead, they erected a straw man by arguing that Suarez did not recklessly or wantonly run a yellow light.

In her response brief, Hart explained that her claims are premised on the theory that Suarez ran the red light and was driving over the speed limit when he did so, not on his testimony that he ran a yellow light to keep his trailer from jackknifing. (Doc. No. 38 at 13-14.) Even without taking into consideration the Alabama Uniform Traffic Crash Report that Defendants moved to strike, Hart submitted substantial evidence that the light was not yellow, but red, when Suarez entered the intersection. Hart's own testimony and Slezak's affidavit more than suffice to establish that fact for purposes of resolving the summary judgment motion. Although the arguments in Hart's opposition brief fall short of establishing that she is entitled to summary judgment in *her* favor, they are enough to meet her burden to respond to Defendants' motion for summary judgment. That is, Hart's response is more than adequate to highlight that Defendants made a straw man summary judgment argument premised on a set of facts that is entirely inapposite to Hart's actual wantonness and recklessness claims. And that is all that was required of Hart for her to overcome Defendants' motion for summary judgment. Only *after* the moving party has met its initial burden to demonstrate the absence of a genuine issue of fact and entitlement to judgment as a matter of law does Rule 56(e) "require[] the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Because Defendants did not argue in their opening brief that Hart could not prove wantonness or negligence on the basis that Suarez entered the

intersection on a red light while speeding, Hart did not bear a burden to come forward with substantial evidence and citations to law establishing that she could prevail on such a theory. This is particularly true where, as here, Defendants fully knew that their summary judgment motion was based on interpreting openly disputed facts in the light most favorable to them and that their initial argument did not fairly represent Hart's claims or even acknowledge the existence of such an important factual dispute.

In their reply brief, Defendants respond to Hart's arguments by contending that, "even assuming *arguendo* that Suarez ran the red light, that conduct alone is insufficient to defeat summary judgment as to wantonness." (Doc. No. 40 at 3.) Defendants also argue in their reply brief that, "even if [Hart] presented admissible evidence to show that Suarez was traveling over the speed limit when he entered the intersection, that evidence would not save [Hart]'s wantonness claim." (*Id*.) Defendants then go on to argue that Hart somehow carried a burden to come forward on summary judgment with clear and convincing evidence[4] that, under the circumstances of this case, Suarez acted wantonly or recklessly by entering the intersection on a red light and/or by entering the intersection while driving over the speed limit.

As explained already, that was not Hart's burden. Her burden was to respond to Defendants' argument that they were entitled to summary judgment on grounds that Suarez did not wantonly or negligently run a yellow light. She did so by adequately explaining

---

[4] Alabama law requires that wantonness and recklessness be proven by clear and convincing evidence. Ala. Code 1975 § 6-11-20.

that her case was not based on a theory that Suarez tortiously entered the intersection on a yellow light, but instead (as alleged in her Complaint), she sought to recover on grounds that Suarez tortiously ran a red light. Thus, Defendants' arguments attacking Hart's actual theory of the case for the first time in a reply brief– a theory that should have been obvious to Defendants in the first place – are not effective to entitle them to summary judgment. To find otherwise would allow Defendants to effectively reverse the parties' burdens on summary judgment by opening with what they knew or should have known was a straw man argument. Therefore, Defendants' summary judgment motion is due to be denied. *Cf. Gutierrez v. City of Woodland*, No. CIV. S-10-1142 LKK/EFB, 2012 WL 1640509, at *13 (E.D. Cal. May 9, 2012) (concluding that, where the Defendants' argument on summary judgment "completely misstate[d]" the plaintiff's case, "Defendants' straw-man argument w[ould] not prevail" on summary judgment); *Perry v. Shelby Cnty. Div. of Corr.*, No. 04-2856-MA/V, 2006 WL 8434649, at *4 (W.D. Tenn. 2006) (denying summary judgment where the defendant's motion "appear[ed] to attack a straw man" in that it "did not clearly articulate the relevant facts"[5] and "d[id] not address some of the critical factual matters on which [the plaintiff] relie[d]").

---

[5] Similarly, in the "Statement of *Undisputed* Facts" in their summary judgment motion, Defendants presented as "undisputed" Suarez's statement that he "saw the yellow light and proceeded through the intersection while the light was still yellow" and that "he saw the yellow light, but did not brake before entering the intersection for two reasons: (1) he believed the he would pass through the yellow light without incident..." (Doc. No. 32 at 2 (emphasis added)). Defendants did not mention that other evidence existed that the light was red, nor did they acknowledge Hart's claims were based on Suarez running a red light rather than a yellow one. Defendants knew or should have known that they were not being candid with the Court when they failed to acknowledge that the color of the light when Suarez entered the intersection was a disputed fact, but instead presented as an undisputed fact that Suarez's light was yellow.

Alternatively, Defendants' summary judgment motion is due to be denied on the basis of *Joseph v. Staggs*, 519 So. 2d 952, 953 (Ala. 1988), the sole case Defendants cite in their reply brief for the proposition that entering an intersection on a red light while speeding is not necessarily wanton or reckless.[6] In *Joseph*, the Alabama Supreme Court addressed a situation where two litigants each accused the other of entering an intersection on a red light while speeding, and each maintained that he entered the intersection on a green light. The court held that the defendant was entitled to a directed verdict on the plaintiff's wantonness claim because the plaintiff did not present evidence at trial that the defendant, "with reckless indifference to the consequences, consciously and intentionally exceeded the speed limit and failed to keep a reasonable look-out upon approaching the intersection." *Id*. at 955.

As noted in *Joseph*, however, "'[t]he question of wantonness must be determined by the facts and circumstances of each case.'" *Id*. at 954 (quoting *Pate v. Sunset Funeral Home*, 465 So. 2d 347, 348 (Ala. 1984). Here, Hart presented evidence that multiple vehicles had fully come to a stop on Highway 280 upon perceiving the light was red, and that Suarez nevertheless passed those vehicles and proceeded through the intersection on a red light. (Doc. No. 38-4 at 3 ¶¶ 6-8.) There is no evidence that Suarez was unable to perceive that the light was red due to blocked vision or some other factor, or that he simply and negligently failed to check the color of the light; nor does the evidence, viewed in the light most favorable to Hart, necessarily lead to the inference that Suarez merely

---

[6] Hart cited *Joseph* in her brief as well.

mistakenly misperceived the color of the light or the existence or placement of other cars at the intersection.[7] He had been trained that, when approaching an intersection with a traffic light, he was to "look at the ... horizon line, as far forward as you can see to see something happen before it happens," "like a pilot." (Doc. No. 38-3 at 5.) Further, it is reasonable to infer from Suarez's training, from the moderate traffic conditions at lunchtime at the intersection, and from common sense about how intersections and traffic lights work, that Suarez was aware that entering the intersection on a red light would expose other motorists to the danger of harm from a motor vehicle accident with his tractor-trailer.

---

[7] In this sense, this case is distinguishable from a number of the cases Defendants cited in their principal summary judgment brief. *See Wright v. McKenzie*, 647 F. Supp. 2d 1293 (2009) (holding that evidence of wantonness was lacking where the undisputed evidence established that the defendant driver misperceived which lane the other driver was in before pulling out in front of her on the highway); *Ex parte Essary*, 992 So. 2d 5, 12 (2007) (holding that evidence of wantonness was lacking where the defendant driver was guilty of, at most, making a rolling stop at a stop sign due to a misperception that he could successfully cross a highway in the gap between two oncoming cars that did not have a corresponding stop sign); *Ex parte Anderson*, 682 So. 2d 467, 470 (Ala. 1996) (holding that a defendant driver did not act wantonly "in turning left while her view of the oncoming traffic was blocked," after she had "waited at the intersection until she believed it was safe to turn"); *Wilson v. Cuevas*, 420 So. 2d 62, 64-65 (Ala. 1982) (holding evidence of wantonness was absent where the evidence viewed in the light most favorable to the plaintiff showed that the defendant entered the intersection in a hurry as the light was changing (not when it was already red) and where the defendant "did not even see" the plaintiff; the court noted that, "[a]lthough defendant's act, under other circumstances, could constitute wanton conduct, here it does not"); *see also Monroe v. Brown*, 307 F. Supp. 2d 1268, 1276 (M.D. Ala. 2004) (in a case involving evidence that a defendant tractor-trailer driver made a conscious decision to speed up to make it through the intersection on a yellow light, distinguishing *Wilson* on several grounds, including that "[t]he *Wilson* decision does not reveal the Supreme Court's reasoning; rather it simply concludes that '[a]lthough defendant's act, under other circumstances, could constitute wanton conduct, here it does not'" (quoting *Wilson*, 420 So. 2d at 64-65)); *George v. Champion Insurance Co.*, 591 So. 2d 852 (Ala. 1991) (holding that evidence of wantonness was lacking where the driver was unaware the light was red when she entered the intersection because she had negligently glanced behind her in conversation while it was still green, and because she thereafter missed the brake pedal with her foot and hit the clutch instead).

[8] Viewing these facts in the light most favorable to Hart, a reasonable juror could conclude that Suarez knowingly and intentionally entered the intersection on a red light, and that he did so with conscious or reckless disregard of the harm he well knew he could (and did) cause to another driver by running the red light. Accordingly, Hart has presented substantial evidence sufficient to establish wantonness or recklessness under Alabama law. *See* Ala. Code 1975 § 6-11-20(b)(3) (defining "wantonness" as "[c]onduct [that] is carried out with a reckless or conscious disregard of the rights or safety of others"); *Joseph*, 519 So. 2d at 953 (holding that, to establish wantonness, the plaintiff "must show that, with reckless indifference to the consequences, the [defendant] consciously and intentionally did some wrongful act or omitted some known duty with knowledge of the existing conditions, and that this act or omission produced the injury complained of").

---

[8] In this way, this case is distinguishable from *Ex parte Essary*, 992 So. 2d 5, 12 (2007) (holding that evidence of wantonness was lacking where the defendant driver was guilty of, at most, making a rolling stop at a stop sign in a misjudged attempt to cross a highway between two oncoming cars that did not have a corresponding stop sign, and there was no evidence that the defendant was conscious that injury was likely to result from the rolling stop). *Cf. McCutchen v. Valley Home, Inc.*, 100 F. Supp. 3d 1235, 1240 (N.D. Ala. 2015) (distinguishing *Essary* on grounds that *Essary* "make[s] it clear that differences in the situation ... can make the difference between conduct being wanton or merely an error in judgment. In this case, the distinction is that Johnson was driving an 18–wheeler rather than an ordinary passenger vehicle, and that distinction is more than mere trivia;" the court concluded that "[a] reasonable jury could determine that [the defendant truck driver's] attempt to 'beat the traffic' in his 18–wheeler involved a conscious disregard for the risk of injury he was creating, and therefore was wanton"). Also, notably, *Essary* heavily relied on a presumption against self-destructive behavior by the defendant driver, which Defendants do not attempt to avail themselves of here, and which Judge Coogler explained in *McCutchen* is not reasonably applicable where the risk to the defendant is significantly less that the risk to which the defendant exposes the plaintiff, such as where the defendant creates a collision risk between the defendant's tractor-trailer rig and a plaintiff's car in a beat-the-traffic situation. (*Id.*) Similarly, Suarez's alleged decision to run a red light did not pose an equal risk to himself as it did to the drivers of the passenger vehicles at the intersection.

Accordingly, Defendants' motion for summary judgment is due to be denied as to Hart's wantonness, recklessness, and wantonness *per se*[9] claims against Suarez, and as to Hart's corresponding respondeat superior[10] and agency claims against Badger State.

**B.     Hart's Claims of Negligent/Wanton Hiring, Training, Supervision, Maintenance, and Entrustment against Badger State**

As Defendants point out, Hart presents no evidence that Badger State negligently or wantonly violated any duty in hiring or training Suarez, in entrusting him with a vehicle driven for them, or in maintaining his vehicle. In response, Hart concedes that she has no evidence of negligent hiring or maintenance of equipment by Badger State. (Doc. No. 38 at 17.) Hart also fails entirely to address her negligent entrustment claim, despite that Defendants squarely raised the issue in their summary judgment motion. (Doc. No. 32 at 11-13.) Because Hart has abandoned her negligent and wanton hiring, maintenance, and entrustment claims, Defendants are entitled to summary judgment on those claims. *Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th Cir. 2013) (holding that the district court properly treated claims as abandoned where the plaintiff asserted those claims in the complaint but did not address them in opposition to a motion for summary judgment); *see Lambert v. FedEx Ground Package Sys., Inc.*, No. 1:22-CV-740-TWT, 2024 WL 253622, at *2 n.3 (N.D. Ga. Jan. 23, 2024) (accepting the plaintiff's concession on summary

---

[9] It is not clear whether "wantonness *per se*" is a separately recognizable claim under Alabama law. *McCutchen*, 100 F. Supp. 3d at 1240; *see also* Ala. Code 1975 § 6-11-10 (defining both wantonness and the circumstances in which punitive damages are allowed in civil actions). Defendants did not move for summary judgment on that ground.

[10] Defendants did not move to dismiss any causes of action that are premised on respondeat superior on grounds that Suarez was an independent contractor.

judgment as to the nonviability of certain claims and granting summary judgment in the defendant's favor on these claims).

In response to Defendants' summary judgment argument regarding negligent and wanton training and supervision, Hart points to no evidence of a breach of any duty of training or supervision. She merely states that she can make her case because it is undisputed that Badger State trained and supervised Suarez and that the accident occurred. That is not enough. Correlation and causation are not the same thing. *Datamaxx Applied Techs., Inc. v. Brown & Brown, Inc.*, No. 21-13451, 2022 WL 3597311, at *4 (11th Cir. Aug. 23, 2022) ("[A]lthough causation begets correlation, correlation does not imply causation."). More importantly, to prove claims of tortiously inadequate training and supervision, Hart must show, among other things, that Badger State knew or should have known that Suarez was likely to run a red light and failed to adequately supervise or train him not to. Hart has come forward with no such evidence. *See Sanders v. Shoe Show*, *Inc.*, 778 So. 2d 820, 824 (Ala. Civ. App. 2000) (discussing the requisite elements of negligent supervision); *James v. Nationstar Mortg.*, *LLC*, 92 F. Supp. 3d 1190, 1200-01 (S.D. Ala. 2015) (stating that, under Alabama law, claims of negligent and wanton supervision and training require "a showing that '(1) the employee committed a tort recognized under Alabama law; (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence; and (3) the employer failed to respond to this notice adequately.'" (quoting *Lawrence v. Christian Mission Center Inc. of Enterprise*, 780 F. Supp. 2d 1209, 1218 (M.D. Ala. 2011)). Therefore, Badger State is entitled to summary judgment on Hart's negligent and wanton training and supervision claims.

C.      Defendants' Motion to Strike

Defendants move to strike the Alabama Uniform Traffic Crash Report on grounds that it "contains hearsay, lacks foundation, contains legal opinions/conclusions, and was not made with personal knowledge of the affiant."[11] (Doc. No. 39.) "Technically, the evidentiary submissions to which [Defendants'] motion is directed are not pleadings subject to a motion to strike under the Federal Rules of Civil Procedure." *Pereira v. Gunter*, No. 2:23-CV-5-ECM-JTA, 2023 WL 8937582, at *4 (M.D. Ala. Dec. 27, 2023); *see also* Fed R. Civ. P. 7(a); Fed R. Civ. P. 12(f). "However, as has been noted in other contexts, courts in this Circuit and elsewhere routinely overlook the technicality that the Federal Rules specifically provide only for motions to strike pleadings and instead rule on the substance of the motion." *Carter v. City of Montgomery*, No. 2:15-CV-555-WKW, 2015 WL 13846254, at *1 (M.D. Ala. Nov. 24, 2015) (citing *Argonaut Midwest Ins. Co. v. McNeilus Truck & Mfg., Inc.*, No. 1:11-CV-3495-TWT, 2013 WL 489141, at *1 (N.D. Ga.

---

[11] Defendants do not expressly direct their motion to strike specifically to the notation in the Alabama Uniform Traffic Crash Report that the speed limit on Highway 280 at the 11th Street intersection was forty miles per hour, which is both an observable fact and one regarding which it would not be at all difficult for Hart to prove using admissible evidence. Rather, Defendants direct their arguments at recorded statements about the accident itself, which the police officer who authored the report did not personally observe. Nonetheless, the Court did not rely on the speed limit recorded in the Alabama Uniform Traffic Crash Report when resolving the summary judgment motion.

Further, the Court notes that Defendants raise new arguments in their reply brief for the inadmissibility of the police report, such as the potential applicability of Ala. Code § 32-10-11. It is improper to raise arguments for the first time in a reply brief, as doing so unfairly deprives the opposing party of the opportunity to respond and be heard on the newly-raised issues. *Lombard v. Baker*, No. 2:22-CV-328-ECM-JTA, 2023 WL 2974933, at *2 (M.D. Ala. Feb. 22, 2023), *report and recommendation adopted*, No. 2:22-CV-328-ECM, 2023 WL 2525509 (M.D. Ala. Mar. 15, 2023) (collecting cases and stating, "a reply brief is not the appropriate place for raising new arguments").

Feb. 8, 2013) (collecting cases)). In substance, Defendants object to the consideration of the Alabama Uniform Traffic Crash Report at the summary judgment stage. Such an objection is permitted under Rule 56(c)(2) of the Federal Rules of Civil Procedure, which provides that a party may object that evidentiary material cited to support or dispute a fact "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see also* Fed. R. Civ. P. 56, *Advisory Committee's Notes to the 2010 Amendments* (noting that, under subdivision (c)(2), "there is no need to file a motion to strike" when making such an objection).

In opposition to Defendants' motion, Hart argues that Suarez's statements, as recorded in the Alabama Uniform Traffic Crash Report, are statements of a party opponent and, therefore, are definitionally not hearsay under Rule 801(d)(2) of the Federal Rules of Evidence. (Doc. No. 42.) Hart does not argue that other matters in the Alabama Uniform Traffic Crash Report are not hearsay, nor does she address Defendants' arguments that all statements of the police officer who authored the report (including the officer's written summary of Suarez's and other witnesses' statements) constitute a second layer of hearsay. In addition, Hart fails to address the fact that evidence submitted on summary judgment need not be admissible in form so long as the propounding party adequately demonstrates that it could present that same evidence in admissible form at trial, nor does she contend that she is capable of presenting the evidence in admissible form.[12] Fed. R. Civ. P. 56(c)(2);

---

[12] The Court notes that individuals associated with the statements made in the Alabama Uniform Traffic Crash Report were listed on Plaintiff's April 22, 2024 Trial Witness List. (Doc. No. 49.) However, in response to the Motion to Strike, Hart did not argue that she would present those

*Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (stating that, while hearsay generally cannot be considered on summary judgment, the court may consider a hearsay statement in ruling on a summary judgment motion if the statement is not contradicted by sworn testimony and if it could be reduced to admissible evidence at trial or reduced to admissible form in some other way, such as by presenting the declarant as a witness or by presenting testimony of another witness with personal knowledge of the matter).

Because the Court did not rely on the Alabama Uniform Traffic Crash Report in resolving Defendants' summary judgment motion, and alternatively because Hart did not raise adequate arguments to rebut Defendants' Motion to Strike, the Court will sustain Defendants' Rule 56(c)(2) objection to considering the Alabama Uniform Traffic Crash Report on summary judgment.[13] Consequently, the Court will grant Defendants' Motion to Strike. (Doc. No. 39.)

## VI.   CONCLUSION

Accordingly, it is ORDERED that Defendants' Motion for Partial Summary Judgment (Doc. No. 32) is GRANTED as to Hart's claims of Negligent/Wanton Hiring, Training, Supervision, Maintenance, and Entrustment against Badger State, and those claims are DISMISSED with prejudice.

---

individuals as witnesses at trial, nor did she contend that their testimony would consist of admissible versions of the statements made in the Alabama Uniform Traffic Crash Report.

[13] This ruling does not affect the admissibility, or lack thereof, of evidence presented at trial.

In all other respects, Defendants' Motion for Partial Summary Judgment (Doc. No. 32) is DENIED.

Further, Defendants' Motion to Strike (Doc. No. 39) is GRANTED.

DONE this 2nd day of May, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE